**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

JESS SLINKARD, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

GILL LOGISTICS, LLC, MICHAEL GILL, and AMANDA GILL,

Defendants.

COLLECTIVE ACTION
Case No.

**FLSA SECTION 216B COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

This is a collective action pursuant to the Fair Labor Standards Act (hereinafter, "FLSA"), 29 U.S.C. §216(b). Plaintiff JESS SLINKARD (hereinafter, "Slinkard" or "Plaintiff), and members of the putative class are Drivers who provided delivery, messenger, courier, and distribution service. As set forth below, Defendants GILL LOGISTICS, LLC, MICHAEL GILL, and AMANDA GILL (hereinafter collectively, "Defendants" or "Gill ") have knowingly and willfully violated the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* by misclassifying Plaintiff and the putative class as "independent contractors," in a scheme to avoid paying overtime wages and other tax obligations. In reality, Plaintiff and similarly situated individuals are in all respects employees under the FLSA and were

controlled, monitored and directed by Defendants as any employee would be. Plaintiff asserts that Defendants' misclassification resulted in a loss of substantial overtime wages otherwise payable to him and all others similarly situated pursuant to the FLSA, 29 U.S.C. § 207.

## JURISDICTION AND PARTIES

1. This Court has jurisdiction under 28 U.S.C. §1331 and 29 U.S.C. §216.

2. Plaintiff Jess Slinkard is a resident of this district, who at all times material hereto, worked for Defendants by providing delivery, messenger, courier, and distribution services and was based out of Defendants' warehouse in Largo, Florida.

3. Defendant GILL LOGISTICS, LLC (hereinafter, "Gill Logistics"), is a Florida Limited Liability Company.

4. Gill Logistics' principal place of business is 1725 SW 12 Ave., Ocala, FL 34471. It may be served through its Registered Agent - Sourcing CFO LLC, 6900 Tavistock Lakes Blvd Ste 400, Orlando, FL 32827.

5. Defendant MICHAEL GILL is the President and Manager of Defendant Gill Logistics and upon information and belief created, implemented and ratified Defendant Gill Logistics' pay practices and policies and is a resident of Florida and subject to the personal jurisdiction of this Court. MICHAEL GILL

can be served at the Corporate office of Gill Logistics or at his home residence located at: 8335 S MAGNOLIA AVE, OCALA, FL 34476-4923.

6. Defendant AMANDA GILL is the Manager-Member of Defendant Gill Logistics and upon information and belief created, implemented and ratified Defendant Gill Logistics' pay practices and policies and is a resident of Florida and subject to the personal jurisdiction of this Court. AMANDA GILL can be served at the Corporate office of Gill Logistics or at her home residence located at: 8335 S MAGNOLIA AVE, OCALA, FL 34476-4923.

7. Michael Gill and Amanda Gill maintained operational control over Gill Enterprises at all times relevant herein and were directly involved in the decision to misclassify Drivers as independent contractors.

8. As an officer, manager, and/or owner of Defendant Gill Logistics, Defendants Michael Gill and Amanda Gill are employers within the meaning of the FLSA. *See In re Van Diepen, P.A.*, 236 Fed. Appx. 498, 12 Wage & Hour Cas. 2d (BNA) 1358 (11th Cir. 2007) (allowing individual liability).

9. Defendants are all employers within the meaning of the FLSA 29 U.S. Code §203, and the corporate Defendant is subject to the FLSA under Enterprise coverage, as it had annual revenues greater than $500,000 and employs more than two (2) full time persons. Defendant is also engaged in interstate commerce.

10. Defendants Michael Gill and Amanda Gill at all times material were both an "Employer" within the defining of FLSA Section 203.

**STATEMENT OF FACTS**

11. Gill Logistics is in the business of providing delivery and distribution services and operates from nine offices located in Florida.

12. Defendants employed Drivers as "independent contractors" to perform such delivery and distribution services.

13. By willfully misclassifying Drivers as independent contractors, Defendants unlawfully avoided the legally required payments of overtime wages and payroll taxes, health insurance benefits, workers' compensation insurance, unemployment insurance, and other such benefits.

14. These so-called independent contractors, including Slinkard and all opt in party Plaintiffs were required to show up at specific locations and at specific times. Defendants assigned work orders with instructions as to specific work which must be done that day.

15. Upon information and belief, during the preceding three (3) years to the present, all Drivers who are classified as independent contractors were trained in a similar manner by Defendants to perform their job duties and requirements in a similar manner and fashion.

16. Upon information and belief, all Drivers who are treated as

independent contractors, have the same job requirements and duties, and are subject to the same compensation plans and/or a common compensation plan throughout Florida, at all times within the years 2019 to the present.

17. Upon information and belief, all Drivers who were treated as independent contractors by Defendants are subject to, governed by or controlled by the same employment rules, procedures and policies.

18. All of the equipment used by Plaintiff and all other similarly situated Drivers is provided by Defendants.

19. Defendants dictate and control the equipment that Drivers must use in performing their job duties and provide the vehicles, vans, trucks, and pallet jacks.

20. Drivers routinely work well over 40 hours each week. Shifts often exceed eight (8) hours per day, and Drivers often work more than five (5) days per week.

21. Throughout his employment, Plaintiff regularly worked more than 40 hours per week, and he has worked six (6) and seven (7) days a week.

22. Plaintiff has not received any overtime pay for the work performed in excess of 40 hours in a workweek.

23. Defendants led Slinkard to believe that he was not entitled to be paid a premium for any overtime hours and that classifying him as an independent contractor was lawful and proper.

24. Plaintiff Slinkard and other Drivers are paid on an hourly rate of pay basis.

25. There is virtually no opportunity for Drivers to work for any other delivery or courier companies or to perform any other delivery or courier services work while working as contractors for Gill.

26. Plaintiff was expected and required to work the weekly set scheduled of Monday through Friday and every other weekend, without discretion to deviate or limit his hours or alter the days.

27. Slinkard worked for Gill as a Driver and at all relevant times was misclassified as an independent contractor, and not an employee.

28. Slinakrd was treated and classified as a W2 employee when hired. Later on, Defendants offered Plaintiff the opportunity to earn a higher rate of hourly pay by going off their books as a W-2 employee and signing an independent contractor agreement.

29. Plaintiff and all other Drivers were given their compensation by Defendants without paying any federal payroll taxes, Medicare taxes, and were issued IRS Form 1099.

30. Defendants have engaged in a common scheme and plan applicable to a large group of Drivers to avoid paying them overtime wages under the FLSA by forcing Plaintiff and members of the putative class to sign a contract labeling them

as independent contractors.

31. Moreover, none of the terms and conditions of the independent contractor agreement were negotiable, including but not limited to: the rates of pay and compensation paid to Plaintiff and all other similarly situated Drivers.

32. “To determine whether an individual falls into the category of covered "employee" or exempted ‘independent contractor,’ courts look to the ‘economic reality’ of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence.” *Scantland v. Jeffry Gill, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013).

33. “This inquiry is not governed by the ‘label’ put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether "the work done, in its essence, follows the usual path of an employee."” *Scantland v. Jeffry Gill, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729, (1947).

34. Defendants exert significant control over the work performed by Plaintiff and members of the putative class.

35. Plaintiff was required to report to a warehouse controlled by Defendants at specific dates and times.

36. Drivers were assigned specific routes created and/or assigned by Gill and were expected to adhere to the scheduled jobs, without deviation or discretion.

Drivers did not have discretion to decline any work order or route.

37. Plaintiff and similar Drivers were highly supervised, watched and managed by Defendants. Drivers' work was routinely inspected by Gill for quality and completeness.

38. Defendants maintained control over the pay, the jobs or routes to be completed, the hours to be worked in a day, the number of days to be worked in a workweek, where the work was to be done, provided the equipment to perform the work, and provided the materials that were to be delivered.

39. Drivers were not allowed to subcontract or hire other persons to perform work assigned by Defendants.

40. Drivers were required to wear uniforms provided by Defendants.

41. Drivers were prohibited from soliciting work outside of the jobs provided and assigned by Gill.

42. Drivers like Slinkard had no opportunity for profit or loss, because their work was entirely dependent upon the jobs assigned by Gill.

43. Drivers like Slinkard had no control over how much they charged or the profit they could make on work orders provided by Gill. They could not negotiate prices with customers or negotiate how much they could charge Gill for the work they performed.

44. The only way for Slinkard and those similarly situated to earn additional compensation was to work additional hours for Defendants.

45. Slinkard and others similarly situated self reported their work hours to Defendants. Thus, Defendants knew that Slinkard and others similarly situated were working overtime hours.

46. Plaintiff and members of the putative class' relationship with Defendants was permanent and exclusive. Plaintiff Slinkard has worked continuously and exclusively for Defendants since November 2021, and since March 2022 to the present as an Independent Contractor.

47. Defendants maintained a de facto policy that if you declined a job, sought to cancel a job or take time off from the weekly work schedule, that doing so would result in your routes and job orders being cut and taken away.

48. Similarly, Defendants maintained an unwritten de facto policy that calling out of work and taking off time during the standard work week could result in being terminated or no longer being assigned work, i.e., routes or jobs.

49. Plaintiff and members of the putative class were and are an integral part of Defendants' business. Gill provides delivery and distribution services.

50. Defendants employ numerous people in the same, if not identical Drivers position as W-2 employees, and not as independent contractors.

51. Upon information and belief, the work and services performed by

Plaintiff and other "independent contractors" is identical to, or nearly identical to work performed by Defendants' W-2 employee Drivers - and all are subject to the same company policies, procedures and work requirements.

52. Plaintiff worked for Defendants as an employee Driver and then later as an independent contractor Driver. At all times as an independent contractor, Plaintiff had the same job duties and requirements as when he was an employee.

53. Gills' misclassification is part of a scheme and plan to evade and avoid paying overtime wages, as well as saving millions of dollars in tax liabilities and other benefits they would have to provide, including workers' compensation.

54. At all times material, Defendants knew that Drivers including Slinkard, the opt in party plaintiffs, and all others similarly situated routinely worked overtime hours.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

55. Plaintiff Slinkard brings this action on behalf of all similarly situated individuals who were or are currently employed by Defendants as Drivers who were classified as independent contractors, or as Defendant labels them Contractors.

56. Plaintiff seeks conditional certification to proceed collectively on behalf of a class of individuals who have performed delivery or courier services

and similar duties for Defendants', and who were not paid overtime wages for hours worked in excess of 40 in a workweek, pursuant to 29 U.S.C. § 216(b).

57. This collective action is to recover from Defendants overtime compensation, liquidated damages, prejudgment interest, costs and reasonable attorney's fees under 29 U.S.C. §216(b) on behalf of the Plaintiff and all similarly situated persons composed of:

> **All persons performing work for GILL LOGISTICS, LLC, as an Independent Contractor under the title of Driver or Contractor, and any other job titles previously or currently used to describe persons performing work as Drivers at any time within the three (3) years preceding this lawsuit to the day of trial.**

58. Plaintiff is ready, willing and able to serve as representative for all others similarly situated, and by the filing of this complaint consents to being a member of this FLSA Section 216(b) collective action.

59. Upon information and belief, Defendant Gill Logistics had 50 or more persons working as independent contractor Drivers at certain times within the relevant class period, and with turnover throughout the preceding three (3) years, the class size is estimated to be upwards of 200 or more persons.

60. Maintaining this action as a collective action is the most appropriate, practical, efficient, and feasible way for this action to proceed.

61. Gill exercised significant, almost total control over the work performed and assigned to Drivers. Drivers had no discretion or control over their

routes and assignments, their pay, their profitability, or the equipment or materials used or customer prices or work schedules.

62. Drivers are an integral part of Gill's business (to provide delivery and courier services). Accordingly, Gill exercised careful and close supervision and review over all work performed by Drivers and terminated Drivers when they deemed their job performance fell below certain levels.

63. The independent contractor agreements, which Defendants labeled as CONTRACTOR PURCHASED TRANSPORTATION AGREEMENT, that Defendants created and used were presented to all present and prospective Drivers on a non-negotiable, "take it or leave it" contracts and terms. Meanwhile Gill reserved the right to terminate, discipline or suspend Drivers just as if they were an employee.

64. That is because Drivers such as Slinkard "were "employees"—not "independent contractors"—under the FLSA." *See Scantland* 721 F.3d 1308, 1319 (11th Cir. 2013)

**COUNT I**
**FAILURE TO PAY OVERTIME COMPENSATION**
**PURSUANT TO THE FLSA 29 U.S.C. § 216(b)**

65. All preceding paragraphs are realleged and incorporated as if fully set forth herein.

66. The actions of Defendants as set forth in this complaint of failing to

pay overtime premiums and classifying Plaintiff and all others similarly situated as independent contractors constitutes a willful violation of the Fair Labor Standards Act, 29 U.S.C. § 207.

67. The position of Driver is a blue-collar job that would not qualify or meet any known exemption under the FLSA. But for the Defendants' unlawful misclassification of Plaintiff and the putative class as independent contractors, Gill would have to pay Drivers a premium for all overtime hours worked and they would be properly classified as non-exempt employees under the FLSA.

68. Pursuant to 29 U.S.C. § 216(b), Plaintiff seeks a court order compelling the Defendants to provide and produce a list of the names, dates of employment and all contact information for all other Drivers classified as independent contractors within the three (3) years preceding the filing of this lawsuit to the present, in order to apprise them of their right to opt in and join this action.

69. While the law holds that a plaintiff may notify and send notice to others of this action and the right to join, absent an order and supervision by the Court, Defendants will not likely produce the information and otherwise challenge the form and contact of the notice.

70. Defendants enticed Plaintiff and all other independent contractor Drivers to sign its independent contractor contract in an attempt to avoid its legal

obligations to pay overtime compensation under the FLSA. Thus the contract is unlawful and in violation of the FLSA.

71. Defendants' independent contractor contract is unlawful and unenforceable under Florida law, as a party cannot contract to do something which is illegal: namely to willfully avoid and evade the obligations to pay FICA taxes, and pay overtime wages as required under the FLSA.

72. Although they are contractually labeled as independent contractors, Plaintiff and the putative class of similarly situated Drivers are in fact employees of Defendants and Defendants treated them as employees.

73. Defendants knew that the Drivers position would result in Drivers routinely working more than 40 hours in order to meet all issued routes or work orders.

74. Plaintiff Slinkard and similarly situated Drivers did in fact work more than 40 hours during numerous work weeks, sometimes working 6 days in a week and 12 hours in a day.

75. Defendants were also well aware that the work and position of a Driver required Plaintiff and the putative class to routinely, if not each and every full week, to work 5 to 6 days per workweek, work more than 40 hours in the workweek in order to complete their routes and job requirements.

76. Defendants willfully failed and refused to pay Plaintiff and all other

similarly situated Drivers a premium for all overtime hours worked because of their scheme to avoid the overtime laws and increase profits.

77. Defendants cannot and do not have a good faith basis under the FLSA for its actions and conduct of willfully misclassifying Plaintiff and all Drivers as independent contractors, and for not paying them a premium for all overtime hours worked in each and every workweek.

78. Defendants have willfully violated Section 207 of the FLSA in order to increase profits and save labor costs - upwards of millions of dollars over the past three (3) years.

79. Plaintiff and all other similarly situated Drivers are entitled to and should be awarded liquidated damages of an equal sum of the overtime wages awarded or recovered for a period of three (3) years preceding the filing of this action to the present.

80. As a direct result of Defendants' unlawful FLSA pay practices complained of herein, Plaintiff and all other similarly situated Drivers misclassified as independent contractors have suffered damages, and theft of their lawfully entitled wages.

81. Plaintiff and all other similarly situated Drivers misclassified as independent contractors are entitled to recover from Defendants the unpaid overtime compensation due and owing for all hours worked in excess of 40 in each

and every workweek within the relevant 3 years preceding the filing of this complaint to the present, plus an equal amount as liquidated damages, prejudgment interest, reasonable attorneys' fees, costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

82. All Defendants in this action are jointly and severally liable for damages awarded to the Plaintiffs in this action.

**WHEREFORE** Plaintiff, Jess Slinkard prays for:

a) An order conditionally designating this action as a collective action pursuant to 29 U.S.C. § 216(b) and authorizing Plaintiff to send notice to all other similarly situated past and present Drivers employed by GILL LOGISTICS, LLC and any of its subsidiaries as Independent Contractors at any time during the three (3) year period immediately preceding the filing of this suit;

b) An order awarding attorneys' fees and costs pursuant to the FLSA;

c) That the Court find all Defendants in violation of the overtime compensation provisions of the FLSA and that the Court find that Defendants' violations of the FLSA were and are willful;

d) That the Court hold all Defendants jointly and severally liable to Plaintiff Slinkard and all others similarly situated for damages suffered by Slinkard and the putative class;

e) That the Court award Plaintiff and the putative class of all similarly situated overtime compensation and a premium for such, for all of the hours worked over forty (40) in each and every workweek during the past three (3) years, AND an equal sum in liquidated damages. In addition, interest on said award pursuant to the FLSA;

f) That the Court award Plaintiff Slinkard a collective action class representative fee or service award fee for his effort and time dedicated to bringing justice through this action;

g) That the Court appoint Mitchell Feldman, Esq. of Feldman Legal Group as class counsel in the FLSA collective action; and

h) That the Court award any other legal and equitable relief as this Court may deem just and appropriate.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

Dated June 24, 2022.

Respectfully submitted.

*Mitchell Feldman, Esq.*
**Mitchell L. Feldman, Esquire**
Florida Bar No.: 0080349
FELDMAN LEGAL GROUP
6916 W. Linebaugh Ave, #101
Tampa, Florida 33625
Tel: 813-639-9366 - Fax: 813-639-9376
Email:mfeldman@flandgatrialattorneys.com
*Attorney for Plaintiff and on behalf of others similarly situated*